UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| HAZEEM BEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.: 3:25-CV-49-TAV-DCP |
| | ) | |
| OFFICER AUSTIN BREWSTER, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Former prisoner Hazeem Bey filed (1) a pro se civil rights complaint, as amended,[1] concerning events that transpired after he was arrested by officers from the Knoxville Police Department ("KPD") on January 29, 2025 [Doc. 12] and (2) a motion for leave to proceed *in forma pauperis* [Doc. 1]. For the reasons set forth below, the Court **GRANTS** Plaintiff's motion for leave to proceed *in forma pauperis* [Doc. 1] and **DISMISSES** Plaintiff's amended complaint.

## I.    MOTION TO PROCEED *IN FORMA PAUPERIS*

Under 28 U.S.C. § 1915, the Court may generally "authorize the commencement, prosecution or defense of any suit, action or proceeding, civil or criminal, or appeal therein, without prepayment of fees or security therefor, by a person who submits an affidavit that includes a statement of all assets such prisoner possesses that the person is unable to pay such fees or give security therefor." 28 U.S.C. § 1915(a)(1). Although the relevant statute

---

[1] Plaintiff was previously ordered to file an amended complaint with "a short and plain statement of the relevant facts supporting his claims" [Doc. 11, p. 8].

specifically references the "assets such prisoner possesses," the Sixth Circuit has construed

the statute to extend to non-prisoners who apply to proceed *in forma pauperis*. *See Floyd*

*v. U.S. Postal Serv.*, 105 F.3d 274, 275–76 (6th Cir. 1997), *superseded by rule on other*

*grounds as stated in Callihan v. Schneider*, 178 F.3d 800 (6th Cir. 1999). When assessing

whether to permit an individual to proceed without paying the filing fee, the Court is not

concerned with whether the applicant is destitute, but rather, "whether the court costs can

be paid without undue hardship." *Foster v. Cuyahoga Dep't of Health & Human Servs.*,

21 F. App'x 239, 240 (6th Cir. 2001).

It appears from Plaintiff's motion that he lacks sufficient financial resources to pay

the filing fee [Doc. 1]. Therefore, the Court will **GRANT** Plaintiff's motion for leave to

proceed *in forma pauperis* [Doc. 1].

## II.      SCREENING OF COMPLAINT

### A.      Screening Standard

Because Plaintiff is proceeding *in forma pauperis*, this Court must screen the

amended complaint and *sua sponte* dismiss any claims that are frivolous or malicious, fail

to state a claim for relief, or are against a defendant who is immune. *See, e.g.,* 28 U.S.C.

§§ 1915(e)(2)(B); *Hill v. Lappin*, 630 F.3d 468, 470 (6th Cir. 2010) ("Because Hill's

lawsuit seeks redress from governmental officers, and because Hill proceeded *in forma*

*pauperis*, the district court screened Hill's complaint as required by 28 U.S.C. §§ 1915A

and 1915(e)(2)(B).").

The dismissal standard articulated by the Supreme Court in *Ashcroft v. Iqbal*, 556

U.S. 662 (2009) and *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544 (2007) "governs

dismissals for failure to state a claim under [28 U.S.C. §§ 1915(e)(2)(B)] because the relevant statutory language tracks the language in Rule 12(b)(6)" of the Federal Rules of Civil Procedure. *Hill*, 630 F.3d at 470–71. Thus, to survive an initial review, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

Formulaic and conclusory recitations of the elements of a claim do not state a plausible claim for relief. *Id.* at 681. Likewise, an allegation that does not raise a plaintiff's right to relief "above a speculative level" fails to state a plausible claim. *Twombly*, 550 U.S. at 570. However, courts liberally construe pro se pleadings and hold them to a less stringent standard than lawyer-drafted pleadings. *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

### B. Plaintiff's Allegations

At approximately 1:00 p.m. on January 29, 2025, "Plaintiff's vehicle was rear-ended by another driver" around Dandridge Avenue and Rosedale Avenue in Knoxville, Tennessee [Doc. 12, p. 3]. "Plaintiff experienced pain consistent with neck and back injury after the impact" [*Id.*]. The driver of the other vehicle contacted the police, and KPD Officers Austin Brewer and John Doe arrived at the scene in two separate squad cars [*Id.*]. Instead of providing Plaintiff with medical treatment, the officers "demanded identification and insurance information" [*Id.*].

In response, Plaintiff produced "a travel/identity document he carries" and calmly attempted to explain that he, as "a Moorish American (American Indian) of Cherokee and Choctaw" "is not a 'sovereign citizen'" [*Id.* at 2, 3]. Officer Brewster "seized Plaintiff,

3

placed Plaintiff in handcuffs, and forced Plaintiff into a police vehicle" [*Id.* at 3]. Officer Doe "observed Brewster's actions, assisted and/or participated, and failed to intervene to stop the unlawful seizure and force" [*Id.*]. Plaintiff's vehicle was then searched, without a warrant or Plaintiff's consent [*Id.* at 4]. As a result, "Plaintiff's personal property was disturbed and left in disarray[,] and Plaintiff suffered property damage and loss" [*Id.*].

Plaintiff requested medical treatment at the scene, but he was not timely transported for treatment [*Id.*]. He was transported to the University of Tennessee Medical Center ("UT Hospital") in Knoxville, where he was placed under an involuntary hold [*Id.*]. Officer Brewer "mocked and humiliated Plaintiff" and "took unauthorized photographs of Plaintiff while Plaintiff was in a neck brace and in significant pain" [*Id.*].

Plaintiff was thereafter transported to the Roger D. Wilson Detention Facility ("RDWDF"), where he was held for approximately 61 hours [*Id.*]. During this period, "Plaintiff was placed in a cell that was freezing cold with no bed and no chair, and Plaintiff was forced to lie/sleep on a dirty floor" [*Id.*]. "Plaintiff observed bugs/insects and was subjected to an unsanitary toilet" [*Id.* at 5].

Plaintiff's jail records "were created under a different name than the name Plaintiff provided and uses, causing misidentification in official records" that "affected how he was treated" and "created continuing harm, including difficulty correcting records and fear of future misidentification" [*Id.*].

There were also "delays and irregularities" in Plaintiff's booking process designed "to justify or cover unlawful conduct" [*Id.*]. Plaintiff was also photographed and fingerprinted "under duress and without a meaningful explanation of lawful basis" [*Id.*].

4

As a result of these events, Plaintiff suffers neck and back pain, anxiety, insomnia, and "PTSD-type symptoms and fear related to police encounters and public safety" [*Id.*]. He also "suffered humiliation, emotional distress, and loss of peace and security, and has incurred damages including medical-related harms and related losses" [*Id.*].

Aggrieved, Plaintiff filed this action seeking monetary damages and declaratory and injunctive against Defendants Officer Brewer, Officer John Doe, the City of Knoxville, Tennessee, and Knox County, Tennessee, for the following claims: (1) an unreasonable seizure and false arrest under the Fourth Amendment; (2) excessive force under the Fourth Amendment; (3) failure to intervene under the Fourth and Fourteenth Amendments; (4) an unreasonable search and property damage under the Fourth Amendment; (5) a denial or delay of medical treatment under the Fourteenth Amendment; (6) unconstitutional conditions of confinement under the Fourteenth Amendment; (7) due process violations under the Fourteenth Amendment; (8) equal protection violations under the Fourteenth Amendment; (9) a "stigma-plus" due process violation; (10) municipal liability against the City of Knoxville and Knox County; and (11) various claims under Tennessee law [*Id.* at 6–11].

C.    Analysis

1.    Section 1983 Claims

A claim under 42 U.S.C. § 1983 requires a plaintiff to establish that a person acting under color of state law deprived him a federal right.  42 U.S.C. § 1983.

Plaintiff has sued the individual Defendants, Officers Brewer and Doe,[2], in both their individual and official capacities [Doc. 12, p. 1].  To state personal liability claims against these Defendants, Plaintiff must adequately plead that each Defendant, by his own actions, has violated the Constitution.  *Iqbal*, 556 U.S. at 676; *see also Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (providing that "a complaint must allege that the defendants were personally involved in the alleged deprivation of federal rights" to state a claim upon which relief may be granted).  This requirement exists because constitutional liability cannot attach to a Defendant solely based on his or her position of authority.  *See Iqbal*, 556 U.S. at 676 ("[O]ur precedents establish . . . that Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*."); *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978) (finding that liability under § 1983 may not be imposed merely because a defendant "employs a tortfeasor").

For Plaintiff to state a claim against Defendants Knox County or the City of Knoxville, he must plausibly allege that a custom or policy of Knox County and/or the City

---

[2] As set forth in the body of this Memorandum Opinion and Order, Plaintiff fails to state a § 1983 claim for relief against Defendant Doe.  Even so, Plaintiff cannot otherwise sustain any § 1983 claims against Defendant Doe related to the incidents in his complaint, which occurred on or about January 29, 2025, because the statute of limitations for Plaintiff's § 1983 claims is one year.  *See Wallace v. Kato*, 549 U.S. 384, 387 (2007); *Tenn. Code Ann.* § 28-3-104; *Foster v. State*, 150 S.W.3d 166, 168 (Tenn. Ct. App. 2004) (applying the one-year statute of limitations from Tenn. Code Ann. § 28-3-104 in a § 1983 claim).  Plaintiff did not further amend his complaint to name Defendant Doe within one year of the events giving rise to Plaintiff's claims, so he is now barred from obtaining § 1983 relief against Defendant Doe.  *See Smith v. City of Akron*, 476 F. App'x 67, 69 (6th Cir. 2012) (holding that adding new, previously unknown Defendants in the place of Doe defendants amounts to addition of parties, and that Federal Rule of Civil Procedure 15(c) offers no remedy to a plaintiff seeking to do so after the statute of limitations has passed).

of Knoxville caused a violation of his constitutional rights. *See Monell*, 436 U.S. at 708 (Powell, J., concurring) (explaining a municipality can only be held liable for a constitutional violation when the violation resulted from "implementation of [the municipality's] official policies or established customs"). The same standard applies to Plaintiff's claims against the individual Defendants in their official capacities, because such claims are against the individual Defendants' employer, the KPD. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (holding "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity"); *Monell*, 436 U.S. at 691 ("[O]fficial-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent.").

Here, Plaintiff's amended complaint is short on factual detail and long on legal conclusions. For instance, he does not disclose (1) whether he was driving the vehicle at the time of the accident, and, if so, whether he was in possession of a valid driver's license; (2) the stated basis for his arrest; (3) what property was damaged and what that alleged damage consisted of; (4) how long he was held at the scene of the traffic accident without medical care; (5) what name he was "processed and recorded under" upon his arrest and how that harmed him; (6) any basis for his belief that he was detained or arrested because of his "perceived group status"; or (7) any facts that explain his claim that being deemed a "sovereign citizen" is stigmatizing [*See generally* Doc. 12]. And despite Plaintiff's allegation that he is not a "sovereign citizen[,]" the implication from his amended complaint is that he is exempt from compliance with certain laws because he is a Moorish American [*Id.*]. But the Sixth Circuit has rejected such claims as "wholly frivolous[.]" *Bey*

*v. Sessler*, No. 23-3421, 2024 WL 2078564, at *2 (6th Cir. Feb. 29, 2024).  However, even if the Court has misapprehended Plaintiff's claims, it is due to his obfuscation of the relevant facts that would render any of his claims plausible, despite the Court's leniency in permitting him to file an amended complaint to properly assert his claims.  And now, having laid that foundation, the Court considers each of Plaintiff's claims in turn.

### a.  Fourth Amendment Search/Seizure/Arrest

Plaintiff seeks to hold Defendants Brewster and Doe liable in their individual capacities for allegedly searching Plaintiff's vehicle without a warrant and arresting Plaintiff without probable cause, in violation of the Fourth Amendment [Doc. 12, pp. 6–7].  To prevail on a false arrest claim brought under § 1983, "a plaintiff [must] prove that the arresting officer lacked probable cause to arrest the plaintiff."  *Voyticky v. Village of Timberlake*, 412 F.3d 669, 677 (6th Cir. 2005).  "Generally, probable cause exists when the police have 'reasonably trustworthy information . . . sufficient to warrant a prudent man in believing that the p[lainitff] had committed or was committing an offense.'"  *Gardenhire v. Schubert*, 205 F.3d 303, 315 (6th Cir. 2000) (quoting *Beck v. Ohio*, 379 U.S. 89, 91 (1964)).  Further, a vehicle search incident to an occupant's arrest is permissible in certain circumstances, such as where an unsecured arrestee has the possibility of access to the vehicle or where the vehicle might contain evidence relevant to the crime of arrest.  *See Arizona v. Gant*, 556 U.S. 332, 333–34 (2009).

Here, Plaintiff has not provided the Court with the stated basis for his arrest, nor has he alleged any particularized facts about the search of the vehicle he occupied at the time of his arrest.   And, as noted above, Plaintiff has not provided the Court with any facts that

would permit the plausible inference that the arresting officers lacked probable cause to arrest him, or that the search of his vehicle incident to that arrest was improper. Thus, Plaintiff's "naked assertion[s]" of wrongdoing are insufficient are insufficient to sustain these Fourth Amendment claims against Defendants, and these claims will be dismissed. *See Twombly*, 550 U.S. at 557.

### b. Excessive Force

Plaintiff maintains that Defendants Brewster and Doe violated the Fourth Amendment when they allegedly "used objectively unreasonable force by grabbing Plaintiff, handcuffing him, and forcing him into a police vehicle despite Plaintiff's nonthreatening, nonresisting conduct and injured status" [Doc. 12, p. 7].

The Fourth Amendment's prohibition against unreasonable seizures prohibits the use of force on an arrestee that is objectively unreasonable. *Reed v. Campbell Cnty.*, 80 F.4th 734, 747–48 (6th Cir. 2023) (citing *Graham v. Conner*, 490 U.S. 386, 388 (1989)). "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight," and it "must embody allowance for the fact that police officers are often forced to make split-second judgments . . . about the amount of force that is necessary in a particular situation." *Scott v. Clay Cnty.*, 205 F.3d 867, 877 (6th Cir. 2000) (quoting *Graham*, 490 U.S. at 396–97). Courts are instructed to "review the actions of each officer separately" and "review separately each use of force by the same officer." *Reed*, 80 F.4th at 748.

Here, Plaintiff complains only that he was grabbed, handcuffed, and forced into a police vehicle subsequent to his arrest [Doc. 12, p. 7]. It appears that the basis of Plaintiff's

9

excessive force claim is the mere fact that Defendant Brewster subjected him to a modicum of force to effectuate the arrest. He does not allege, for instance, that Defendant Brewster's actions were particularly forceful, or that he was somehow injured as a result of these particular actions, as opposed to the traffic accident itself. And he has not alleged any facts suggesting any use of force by Defendant Doe. Accordingly, the Court finds that Plaintiff has failed to articulate facts to render this claim plausible, and it will be dismissed.

### c. Failure to Intervene

Plaintiff alleges that, in violation of the Fourth and Fourteenth Amendments, Defendant Doe "was present, observed the unconstitutional seizure and force, had a realistic opportunity to intervene, and failed to do so" [Doc. 12, p. 7]. But Plaintiff cannot sustain a failure-to-intervene claim without an underlying constitutional violation. *Branham v. Grinage*, No. 88-1611, 1989 WL 11070, at *1 (6th Cir. Feb. 10, 1989). Here, Plaintiff has failed to state plausible claims related to his arrest and/or the force used to accomplish that arrest, and therefore Defendant Doe can bear no liability in failing to intervene to prevent these events. This claim will be dismissed.

### d. Delay/Denial of Medical Care

Plaintiff maintains that, in violation of the Fourteenth Amendment, Defendants Brewster and Doe "delayed/denied timely care at the scene and maintained Plaintiff under an involuntary custodial hold during medical evaluation" despite his "objectively serious medical need" following the traffic incident, and Knox County failed its responsibility "for detainee-care and intake practices relevant to screening and ensuring timely care" [Doc. 12, p. 8].

While Plaintiff maintains that the Court should analyze this claim under the Fourteenth Amendment, it is not clear that the Fourteenth Amendment, rather than the less demanding Fourth Amendment, applies. *See, e.g., Boone v. Spurgess*, 385 F.3d 923, 933–35 (6th Cir. 2004). To state a claim under the Fourteenth Amendment, Plaintiff must plausibly allege that (1) he had a sufficiently serious medical need to which (2) the defendant "acted deliberately (not accidentally), [and] also recklessly 'in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known.'" *Helphenstine v. Lewis Cnty.*, 60 F.4th 305, 317 (6th Cir. 2023) (citation omitted) (applying Fourteenth Amendment standard to pretrial detainee); s*ee also DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S 189, 199–200 (1989) (explaining that the Fourteenth Amendment imposes affirmative duty to provide medical care to those it takes into custody).

To state a claim under the Fourth Amendment for the denial/delay of medical care, however, Plaintiff must only plausibly allege that the Defendant's response to his medical needs was objectively unreasonable. *Esch v. Cnty. of Kent*, 699 F. App'x 509, 514 (6th Cir. 2017) (affirming dismissal of inadequate medical care claim without resolving whether the plaintiff was a free person or pretrial detainee). Informing a court's determination of whether a defendant's response was objectively unreasonable is whether the defendant had notice of the medical need, the seriousness of the need, the scope of treatment requested, and the police interests at issue. *Id.* at 515 (citing *Ortiz v. City of Chicago*, 656 F.3d 523, 530–31 (7th Cir. 2011)).

Under either the Fourth or Fourteenth Amendment standard, Plaintiff's amended complaint fails to state a plausible claim for the denial/delay of medical care. Plaintiff concedes he was transported to UT Hospital from the scene of the traffic accident [*See* Doc. 12, p. 4]. And while Plaintiff complains that his treatment was delayed despite his "visible need after a crash[,]" he does not disclose the length of time medical treatment was allegedly delayed, or how his visible medical needs manifested themselves. Nor does Plaintiff disclose what specific injuries he suffered or what treatment those injuries required. Therefore, he has failed to plausibly allege that Defendants Brewster or Doe's response to his medical needs was objectively unreasonable, much less that they acted deliberately and recklessly.

Plaintiff's claim likewise fails against Knox County. Plaintiff does not allege that Knox County had any responsibility to provide him with medical care at the scene of the traffic accident. And he does not allege that he was denied adequate medical care after his detention in the RDWDF. Accordingly, Plaintiff's claims for the denial/delay of medical treatment will be dismissed.[3]

---

[3] In his factual recitation of events that occurred at UT Hospital, Plaintiff notes that Officer Brewster "mocked and humiliated Plaintiff" [Doc. 12, p. 4]. To the extent Plaintiff makes these allegations to assert a violation of a constitutional right, any such claims fails. *See, e.g., Vasquez v. Hamtramck*, 757 F.2d 771, 773 (6th Cir. 1985) ("A citizen does not suffer a constitutional deprivation every time he is subject to the petty harassment of a state agent."); *Patton v. Przybylski*, 822 F.2d 697, 700 (7th Cir. 1987) (holding "[v]erbal harassment and abusive language," while "unprofessional and inexcusable," are insufficient to state a claim under § 1983 because "citizens do not have a constitutional right to courteous treatment by the police").

### e. Conditions of Confinement

Plaintiff claims that Knox County violated his Fourteenth Amendment rights by housing him at the RDWDF in "objectively unreasonable" conditions that "posed a substantial risk to [his] health and safety" [Doc. 12, p. 8]. Specifically, Plaintiff claims that, for a period of approximately 61 hours, he "was confined in extreme cold without bedding or furniture, forced to lie/sleep on a dirty floor, exposed to insects, and subjected to unsanitary toilet conditions" [*Id.* at 4, 8].

Claims concerning conditions of confinement "are highly fact-specific[.]" *Lamb v. Howe*, 677 F. App'x 204, 209 (6th Cir. 2017). The Sixth Circuit has held:

> [A] conditions-of-confinement claim has two elements. First, the deprivation alleged must be, objectively, sufficiently serious; a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities. Second, the prison official's state of mind [must be] one of deliberate indifference to inmate health or safety.

*Spencer v. Bouchard*, 449 F.3d at 728 (6th Cir. 2006) (internal citations and quotation marks omitted), *abrogated on other grounds by Jones v. Bock*, 549 U.S. 199 (2007).

As to the first element, it is well-established that "the Constitution does not mandate comfortable prisons." *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981). Rather, only "extreme deprivations" that deny a prisoner "the minimal civilized measure of life's necessities" will establish a cognizable conditions-of-confinement claim. *Hudson v. McMillan*, 503 U.S. 1, 8–9 (1992) (citations and internal quotation marks omitted). The "length of exposure to the conditions is often paramount." *Lamb*, 677 F. App'x at 209 (citation omitted); *see also Hutto v. Finney*, 437 U.S. 678, 686–87 (1978) ("[T]he length of confinement cannot be ignored in deciding whether the confinement meets constitutional

standards. A filthy, overcrowded cell and a diet of 'grue' might be tolerable for a few days and intolerably cruel for weeks or months."). And regarding the second element, a defendant demonstrates deliberate indifference to a pretrial detainee by acting "deliberately" and "recklessly 'in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known.'" *Brawner v. Scott Cnty.*, 14 F.4th 585, 596 (6th Cir. 2021) (quoting *Farmer*, 511 U.S. at 836).

Plaintiff's amended complaint does not allege any facts that would permit the plausible inference that his exposure to any of the complained-of conditions posed a significant risk of harm to his health or safety. And Plaintiff has no constitutional right to sleep on an elevated bed, *Graves v. Boyd*, No. 5:16-CV-P51-TBR, 2016 WL 4386102, at *5 (W.D. Ky. Aug. 15, 2016) (recognizing that "a prisoner has no constitutional right to sleep on an elevated bed"); to be any certain distance away from the toilet, *Goldman v. Forbus*, 17 F. App'x 487, 488 (8th Cir. 2001) (finding no constitutional violation where detainee slept six nights on the floor next to a toilet); to be housed in a facility free of insects, *Yoder v. Seals*, No. 07-436, 2009 WL 737099, at *3 (E.D. Tenn. Mar. 19, 2009) (dismissing claims about bugs and spiders in cell as "the inconveniences and general living conditions associated with incarceration"); or to be free from exposure to merely uncomfortable temperatures, *Grubbs v. Bradley*, 552 F. Supp. 1052, 1122–23 (M.D. Tenn. 1982) (holding "constitutionally adequate housing is not denied simply by uncomfortable temperatures inside cells, unless it is shown that the situation endangers inmates' health"). Therefore, Plaintiff has not alleged any facts that render it plausible that the conditions under which he was confined denied him "the minimal civilized measure of life's

14

necessities[,]" *Hudson*, 503 U.S. at 9, and Plaintiff's conditions-of-confinement claim will be dismissed.

### f. Due Process

Plaintiff alleges that, in violation of his due process rights under the Fourteenth Amendment, Defendants Brewster, Doe, the City of Knoxville, and Knox County subjected him "to continued involuntary detention . . . without adequate procedural safeguards and without a lawful basis communicated to Plaintiff" and "processed and recorded [Plaintiff] under a different name than the name he provided and uses, . . . [which] altered official records and contributed to adverse treatment and continuing harm" [Doc. 12, p. 9].

Even though Plaintiff cites the Fourteenth Amendment as providing the constitutional protection for this claim, he identifies *County of Riverside v. McLaughlin*, 500 U.S. 44 (1991) and *Gerstein v. Pugh*, 420 U.S. 103 (1975) as providing the law governing his allegations [Doc. 12, p. 9]. And regarding *Gerstein*/*McLaughlin* claims, the Sixth Circuit has stated:

> "A person arrested pursuant to a warrant issued by a magistrate on a showing of probable cause is not constitutionally entitled to a separate judicial determination that there is probable cause to detain him pending trial." In the case of a warrantless arrest, "a policeman's on-the-scene assessment of probable cause provides legal justification for arresting a person suspected of crime, and for a brief period of detention to take the administrative steps incident to arrest." Once that suspect is in custody, however, "the Fourth Amendment requires a judicial determination of probable cause as a prerequisite to extended restraint of liberty following arrest." An adversarial hearing is not required, nor is there a single preferred pretrial procedure. Rather, whatever procedure a State adopts, "it must provide a fair and reliable determination of probable cause [to arrest] as a condition for any significant pretrial restraint of liberty, and this determination must be made by a judicial officer either before or promptly after arrest." Addressing what "prompt" means in this context, *McLaughlin* clarified "that a jurisdiction that provides

15

judicial determinations of probable cause within 48 hours of arrest will, as a general matter, comply with the promptness requirement of *Gerstein*."

*Cox v. City of Jackson*, 811 F. App'x 284, 286 (6th Cir. 2020) (internal citations omitted).

Thus, the Court presumes the Fourth Amendment is the appropriate constitutional source of Plaintiff's due process right to a prompt judicial determination of probable cause. *See McLaughlin*, 500 U.S. at 55. The Court also presumes that Plaintiff was not arrested pursuant to a warrant. But Plaintiff does not allege when, if at all, a judicial determination of probable cause was made in this case. Therefore, he has not alleged any facts to support his conclusory allegation that he did not receive a prompt judicial determination, and his *Gerstein*/*McLaughlin* claim will be dismissed.

Regarding Plaintiff's allegation that he was misidentified in legal/jail records, he provides no facts from which the Court could plausibly infer that his rights were violated. Plaintiff does not disclose the name under which he was arrested and/or jailed. Nor is it clear that "Hazeem Bey" is Plaintiff's legal name, as opposed to a name he has adopted as part of his Moorish American identity. And detention facilities are not constitutionally required to change their record-keeping or identification procedures to accommodate informal name changes. *See, e.g., Rahman v. Stephenson*, 626 F. Supp. 886, 887 (W.D. Tenn. 1986). Accordingly, the Court finds this allegation likewise fails to state a claim, and it will be dismissed.

### g. Equal Protection

Plaintiff alleges that Defendants Brewster, Doe, and the City of Knoxville violated his Fourteenth Amendment right to equal protection by "treat[ing] him with hostility and

16

escalat[ing] enforcement actions because of Plaintiff's asserted identity and/or perceived group status, rather than applying neutral law-enforcement standards to an injured crash victim" [Doc. 12, p. 9].

The Fourteenth Amendment's Equal Protection Clause provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const., amend. XIV, § 1.  "To state an equal protection claim, a plaintiff must adequately plead that the government treated the plaintiff 'disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis.'"  *Ctr. For Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011) (quoting *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby, Mich.*, 470 F.3d 286, 299 (6th Cir. 2006)).  Plaintiff must also allege facts sufficient to permit the plausible inference "that the disparate treatment in question is the result of intentional and purposeful discrimination."  *Robinson v. Jackson*, 615 F. App'x 310, 314 (6th Cir. 2015) (citing *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)).

Here, Plaintiff has not supported his conclusory allegations with any factual detail that would render an equal protection claim plausible.  While Plaintiff alleges that he was detained and/or arrested "because of [his] asserted identity and/or perceived group status," i.e., ostensibly because he is a Moorish American, he does not provide any factual details that would permit the plausible inference that such was the case.  Instead, Plaintiff alleges only that (1) Defendants Brewster and Doe demanded his identification and insurance information; (2) Plaintiff "presented identification (including a travel/identity document he

17

carries) and attempted to explain his identity and status"; and (3) Plaintiff was seized, handcuffed, and placed in a police vehicle [Doc. 12, p. 3]. Given these allegations, it is equally possible that Plaintiff was detained and/or arrested for failing to produce a valid identification. *See, e.g.*, Tenn. Code Ann. § 55-50-351 (requiring motorist exhibition of driver's license upon demand); *see also Techu-El v. Conetta*, No. 22-CV-0111, 2022 WL 2704101, at *3 (S.D.N.Y. July 11, 2022) ("Courts have repeatedly rejected arguments that a Moorish National 'right to travel' card has any legal validity."). Accordingly, as Plaintiff has failed to allege sufficient facts to render this claim plausible, it will be dismissed.

### h. "Stigma-Plus"

Citing *Paul v. Davis*, 424 U.S. 693 (1976), Plaintiff alleges that the City of Knoxville and Defendants Brewster and Doe "falsely labeled and treated Plaintiff" as a "sovereign citizen" to "escalate force, justify detention, and intensify stigma and ongoing fear and scrutiny, causing reputational harm plus concrete liberty deprivations" [Doc. 12, p. 10].

The "stigma-plus" test of *Davis* "is used to analyze a due process claim where the action taken by the state injures the plaintiff's reputation." *Doe v. Mich. Dep't of State Police*, 490 F.3d 491, 501 (6th Cir. 2007). To sustain such a claim, Plaintiff must "show that the state's action both damaged his . . . reputation (the stigma) and that it 'deprived [him . . .] of a right previously held under state law' (the plus)." *Id.* (citing *Davis*, 424 U.S. at 708).

His conclusory allegations to the contrary, Plaintiff has not presented any facts to allow the plausible inference that his reputation was damaged by Defendants' actions, or

18

that their actions deprived him of a protected interest under state law.  This claim will be dismissed.

### i.  Municipal Liability

Plaintiff maintains that the constitutional violations alleged in his amended complaint were caused by the (1) City of Knoxville's practice of inadequately training/supervising its officers, and (2) Knox County's policies/practices of unsafe conditions and inadequate medical screenings [Doc. 12, p. 10].

But, as set forth above, Plaintiff has not plausibly alleged a constitutional violation. And there can be no municipal liability absent a constitutional violation.  *See, e.g., Thomas v. City of Columbus*, 854 F.3d 361, 367 (6th Cir. 2017) ("No constitutional violation means no municipal liability." (citing *Lee v. Metro Gov't of Nashville & Davidson Cnty.*, 432 F. App'x 435, 449 (6th Cir. 2011))).  Accordingly, Plaintiff's municipal liability claims will be dismissed.

### 2.  State-Law Claims

Because the Court dismisses all Plaintiff's federal claims, it will exercise its discretion to decline to exercise supplemental jurisdiction over the remaining state law claims by dismissing these claims without prejudice.  28 U.S.C. § 1367(c)(3); *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726–27 (1966) ("[I]f the federal claims are dismissed before trial, . . . the state claims should be dismissed as well.").

## III.  CONCLUSION

For the reasons set forth above:

19

1.  Plaintiff's motion for leave to proceed *in forma pauperis* [Doc. 1] is **GRANTED**;

2.  Plaintiff has failed to state a claim upon which relief may be granted under § 1983, and his constitutional claims are **DISMISSED** pursuant to 28 U.S.C. §1915(e)(2)(B);

3.  All State-law claims are **DISMISSED without prejudice**; and

4.  The Court **CERTIFIES** that any appeal from this action would not be taken in good faith and would be totally frivolous. *See* Rule 24 of the Federal Rules of Appellate Procedure.

IT IS SO ORDERED.

AN APPPROPRIATE JUDGMENT ORDER WILL ENTER.

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE